IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| OMOWALE AKINTUNDE and MANFRED WOGUGU, | ) ) ) | Case No. 4:15-cv-03011 |
| Plaintiffs, | ) ) | |
| v. | ) ) | **DEFENDANT BOOCKER'S ANSWER TO SECOND AMENDED COMPLAINT** |
| THE BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA, and DAVID BOOCKER, | ) ) ) ) | |
| Defendants. | ) ) | |

COMES NOW Defendant Joseph David Boocker, Ph.D. ("Dr. Boocker"), Dean of the University of Nebraska at Omaha ("UNO") College of Arts and Sciences, in his individual capacity, and in response to the Plaintiffs' Second Amended Complaint ("Complaint") *[Doc. No. 12; Doc. No. 12-1],* and the Court's text order *[Doc. No. 16],* admits, denies, and alleges as follows:

1.    The allegations in paragraph 1 of the Complaint consist of Plaintiffs' characterization of this lawsuit and as such require no response.  To the extent a response is deemed necessary, Dr. Boocker denies paragraph 1 of the Complaint and denies that Plaintiffs are entitled to any of the relief described in paragraph 1.

### JURISDICTION AND VENUE

2.    Dr. Boocker admits paragraph 2 of the Complaint.

3.    Dr. Boocker denies paragraphs 3 and 4 of the Complaint.

4.    Dr. Boocker admits paragraph 5 of the Complaint.

Page 1

**PARTIES**

5.      In response to paragraph 6 of the Complaint, Dr. Boocker denies that Plaintiff Omowale Akintunde ("Dr. Akintunde") has attained the rank of full professor. Dr. Boocker alleges that Dr. Akintunde is employed by the Board of Regents of the University of Nebraska ("BRUN") at UNO and that Dr. Akintunde was chair of the Black Studies Department ("Department") from August of 2008 until August 15, 2011. Dr. Boocker admits the remaining allegations of paragraph 6 of the Complaint.

6.      In response to paragraph 7 of the Complaint, Dr. Boocker denies that Plaintiff Manfred Wogugu ("Dr. Wogugu") has attained the rank of full professor.  Dr. Boocker alleges Dr. Wogugu is employed by the BRUN at UNO.  Dr. Boocker admits the remaining allegations of paragraph 7.

7.      Dr. Boocker denies paragraph 8 of the Complaint.

8.      Dr. Boocker denies paragraph 9 of the Complaint.  Dr. Boocker alleges that the BRUN has constitutional responsibility for the general government of the University of Nebraska.

9.      In response to paragraph 10 of the Complaint, Dr. Boocker affirmatively alleges he is employed by the BRUN as the Dean of the College of Arts and Sciences at UNO (the "College") and was acting in his official capacity at all times relevant to the Complaint.  Dr. Boocker admits the remaining allegations of paragraph 10 of the Complaint.

10.     Dr. Boocker denies paragraph 11 of the Complaint.   Dr. Boocker affirmatively alleges that the Department is part of the College and is subject to the rules of the College, UNO, BRUN, and laws of the State of Nebraska.  Dr. Boocker specifically alleges that academic departments at UNO are subject to the terms of §

2.10 of the *Bylaws of the Board of Regents of the University of Nebraska* ("*Bylaws*").

11.    In response to paragraph 12 of the Complaint, Dr. Boocker admits that the "Constitution of the Department of Black Studies: Effective Sept. 6, 2002" ("Department Constitution") is one of the rules applicable to the Department.   Dr. Boocker affirmatively alleges the Department Constitution speaks for itself.   Dr. Boocker denies the remaining allegations of paragraph 12 of the Complaint.

## GENERAL ALLEGATIONS

12.    Dr. Boocker denies paragraph 13 of the Complaint.

13.    Dr. Boocker denies all but the last sentence of paragraph 14 of the Complaint, which he admits.

14.    Dr. Boocker admits paragraphs 15 and 16 of the Complaint.

### Workplace Violence and Hostile Work Environment

15.    In response to paragraph 17 on page 4 of the Complaint, Dr. Boocker alleges that in 2012, Professor Nikitah Okembe-RA Imani, Ph.D. ("Dr. Imani") was recommended for hire as Chair of the Department by members of the Department faculty, including Plaintiffs, and Dr. Imani was supported by Dr. Boocker.   Dr. Boocker affirmatively alleges that Dr. Imani served as Chair of the Department until expiration of his appointment on May 15, 2015.

16.    Dr. Boocker denies paragraphs 18 on pages 4-5 of the Complaint.

17.    Dr. Boocker denies paragraph 17 on page 5 of the Complaint.

18.    Dr. Boocker admits paragraph 18 on page 5 of the Complaint.   Dr. Boocker affirmatively alleges that Dr. Imani shared with the "core" faculty a copy of a one-page document entitled "Department of Black Studies Copy Policy Effective

2/10/2014 Edition 1" ("Copy Policy") before the meeting of the Department "core" faculty on Wednesday, February 19, 2014 (the "Meeting"), and that the members of the Department "core" faculty are Plaintiffs, Dr. Imani, Associate Professor Margaret "Peggy" Jones ("Ms. Jones"), and Assistant Professor Jennifer Harbour, Ph.D. ("Dr. Harbour").

19.    Dr. Boocker affirmatively alleges in response to paragraphs 19 through 23 that the Meeting was held in ASH 184E and was attended by all members of the Department "core" faculty; that members of the Department "core" faculty in attendance, including Plaintiffs, at the Meeting were critical of the Copy Policy and other administrative matters within the Department; that Dr. Imani lost his composure at the Meeting; that Dr. Wogugu did not remain in ASH 184E following the Meeting and left the room before Dr. Imani did; that after Dr. Imani left ASH 184E, a framed picture fell to the floor in the adjoining reception area, and the fall broke the glass in the picture frame; and that Dr. Imani cut himself while cleaning up the broken glass.  Dr. Boocker further alleges that on February 22, 2014, Dr. Imani sent Dr. Akintunde and Ms. Jones an email with the subject line "Invitation to Dialogue," which stated in part: "Reiterating my apology for losing my composure and my professional conduct at the Meeting on Wednesday, I would like to invite you to a meeting or lunch if you would prefer.  You may bring a witness if you like and if that makes you feel more comfortable."  Dr. Boocker is without knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in paragraphs 19 through 23 of the Complaint and therefore denies the same.

20.    Dr. Boocker denies paragraphs 24 through 26 of the Complaint.  Dr. Boocker affirmatively alleges that Dr. Harbour sent an email to Plaintiffs and Ms.

Jones on February 22, 2014 stating she thought Dr. Imani "will BLOW.  Granted, this is probably me projecting my childhood onto him, but it makes me very nervous"; that Drs. Harbour and Imani exchanged numerous emails on February 22, 2014; and that on February 24, 2014, Dr. Harbour shared with Plaintiffs the text identified as Facebook posts by Dr. Imani.

21.     In response to paragraph 27 of the Complaint, Dr. Boocker admits that the Plaintiffs, Dr. Harbour, and Ms. Jones prepared and signed a four-page memo dated February 24, 2014 and delivered copies to Dr. Boocker and Paul Kosel ("Mr. Kosel"), Manager of UNO Campus Security and co-chair of the UNO Behavioral Review Team ("BRT").  Dr. Boocker denies the remaining allegations of paragraph 27.

22.     Dr. Boocker admits the first sentences of paragraphs 28 and 29 of the Complaint.  Dr. Boocker denies that the Complaint attaches any Exhibit 3.

23.     In response to paragraph 30 of the Complaint, Dr. Boocker denies that the Complaint attaches any Exhibit 3.   Dr. Boocker admits the remainder of paragraph 30 of the Complaint.

24.     Dr. Boocker denies paragraph 31 of the Complaint.   Dr. Boocker affirmatively alleges that the BRT Procedures do not address the responsibility of Deans to report incidents reported by the faculty and instead state, "It is the responsibility of all faculty, staff, and students to immediately report any situation that could reasonably result in harm" and "University community members will be able to report threatening or concerning behavior to the Team by speaking directly to a committee member or submitting an incident report."  Dr.  Boocker further alleges that the BRT Procedures state, "It is everyone's responsibility to report to the

Behavioral Review Team situations that could possibly result in harm to any member of the campus community. **If an incident represents an immediate threat, the observer should report directly to Campus Security at 402-554-2911 or 911.**" (Emphasis in original).

25.     In response to paragraph 32 of the Complaint, Dr. Boocker denies the first sentence of paragraph 32 but admits the last sentence. Dr. Boocker affirmatively alleges Plaintiffs and the other signatories to the four-page memo dated February 24, 2014 sent copies of the document to Dr. Imani and Mr. Kosel.

26.     Dr. Boocker lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 33 of the Complaint and therefore denies the same.

27.     Dr. Boocker admits the first sentence of paragraph 34 of the Complaint. Dr. Boocker denies that the Complaint attaches any Exhibit 4.

28.     In response to paragraph 35 of the Complaint, Dr. Boocker admits and alleges that on or about February 25, 2014, Dr. Boocker, at the recommendation of UNO Senior Vice Chancellor for Academic and Student Affairs Burton J. Reed, Ph.D. ("Dr. Reed"), met with Charlotte Ann Russell ("Ms. Russell"), UNO Assistant to the Chancellor for Equity Access and Diversity and BRT member; that on February 26, 2014, Ms. Russell recommended that Dr. Boocker contact Joe Gerstandt ("Mr. Gerstandt"), a consultant who was thought to be a good match for the Department faculty; that Dr. Boocker spoke with Mr. Gerstandt on the same day and gave him materials describing the Meeting and the emails exchanged by members of the "core" faculty and Dr. Imani afterward; that on February 27, 2014, Dr. Boocker received an email from Mr. Gerstandt which stated in part, "I do not see any clear physical threat

as I understand what happened on February 19th"; that on March 5, 2014, Dr. Boocker emailed the "core" faculty stating he had enlisted the services of a consultant to allow the Department to move forward in a constructive and productive fashion; that there was no need for Dr. Boocker to forward Plaintiffs' four-page memo to the BRT; and that Mr. Gerstandt was asked to contact all members of the "core" faculty as well as four  persons from the UNO community whom Dr. Boocker believed would have insights about the Department: Dr. Cynthia Robinson (former interim chair of the Department, current Department chair, and UNO faculty member in the School of Communication), Robert Armstrong (Department instructor and member of the UNO Chancellor's African American Advisory Cabinet), Dr. Gail Baker (Dean of the UNO College of Communication, Mass Media, and Fine Arts), and James Freeman (UNO Director of Multicultural Affairs and member of the UNO Chancellor's African American Advisory Cabinet).

29.    In response to paragraph 36 of the Complaint, Dr. Boocker admits that Plaintiffs, in addition to Dr. Harbour and Ms. Jones, refused to meet with Mr. Gerstandt individually.  Dr. Boocker denies that he issued Plaintiffs a directive to meet individually with Mr. Gerstandt and denies that Plaintiffs never received a response to their request to meet with Mr. Gerstandt as a unit.  Dr. Boocker affirmatively alleges that on March 6, 2014, Plaintiffs, Dr. Harbour, and Ms. Jones sent Dr. Boocker a memo entitled "Introduction of Consultant for Black Studies" stating their "expression of appreciation for the efforts [Dr. Boocker was] making to resolve the current crisis in the Department"; that on March 7, 2014, Dr. Boocker emailed the Plaintiffs, Dr. Harbour, and Ms. Jones and wrote that Mr. Gerstandt stated he needed to "start with

individual meetings" and there could certainly be the opportunity for "group conversations once we get further along"; and that Mr. Gerstandt did not receive a response of any kind from Plaintiffs as a result of Dr. Boocker's March 7 email.  Dr. Boocker denies that the Complaint attaches any Exhibit 5.

30.     In response to paragraph 37 of the Complaint, Dr. Boocker denies the first sentence of paragraph 37.  Dr. Boocker admits and alleges that Mr. Gerstandt provided a two-page summary assessment of leadership and communication styles within the Department to Dr. Boocker on March 25, 2014 and that paragraph 37 of the Complaint contains an incomplete quote from the summary assessment.

31.     Dr. Boocker denies paragraphs 38 through 40 of the Complaint.

32.     In response to paragraph 41 of the Complaint, Dr. Boocker admits that Plaintiffs sent Dr. Boocker a one-page memo entitled "Response to Dean Boocker's Update" dated April 14, 2014.  Dr. Boocker affirmatively alleges the Plaintiffs' memo indicated the Plaintiffs and remaining "faculty appreciate[d] [Dr. Boocker's] deep concern about the Department" and "look[ed] forward with hope that [Dr. Boocker's] continued interest and effort will result in a quick resolution of this crisis."  Dr. Boocker denies the remaining allegations of paragraph 41.

33.     In response to paragraph 42 of the Complaint, Dr. Boocker admits and alleges that on May 12, 2014, a meeting called by Dr. Boocker was held with the "core" faculty and with Ed Wimes ("Mr. Wimes"), Associate to the President of the University of Nebraska/Assistant Vice President of Human Resources and Director of Equity and Diversity, who participated in the meeting by phone.  Dr. Boocker further admits and alleges that at the end of this meeting to discuss the need for the "core" faculty to work together to build a future for the Department, Plaintiffs delivered a two-page document

Page 8

entitled "Vote of No Confidence on Dr. Nikitah Imani—Chair, Department of Black Studies" to Dr. Boocker and other recipients and expressing, among other things, Plaintiffs' "appreciation to the Dean, College of Arts & Sciences, and the entire University administration for the effort being made to resolve the crisis in the Department." Dr. Boocker denies the remaining allegations of paragraph 42.

34.    In response to paragraph 43 of the Complaint, Dr. Boocker denies that the Complaint attaches any Exhibit 8.    Dr. Boocker is without knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 43 of the Complaint and therefore denies the same.

35.    In response to paragraph 44 of the Complaint, Dr. Boocker admits and alleges that Plaintiffs' counsel sent a letter dated September 3, 2014 to BRUN's counsel which contains the statements quoted in paragraph 44.  Dr. Boocker denies the remaining allegations of paragraph 44 of the Complaint.

36.    In response to paragraph 45 of the Complaint, Dr. Boocker admits and alleges that Dr. Reed sent a two-page letter of referral to the BRT dated September 29, 2014 with 27 pages of attachments, including the February 24, 2014 four-page memo, the March 6, 2014 memo, the April 14, 2014 memo, the May 12, 2014 document, the BRT Procedures, and other relevant documents.  Dr. Boocker denies the remaining allegations in paragraph 45.

37.    Dr. Boocker denies paragraph 46 of the Complaint.

38.    Dr. Boocker is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 47 of the Complaint relating to Plaintiffs' beliefs and therefore denies the same.  Dr. Boocker denies the remaining

allegations of paragraph 47 of the Complaint.

39.    In response to paragraph 48 of the Complaint, Dr. Boocker admits and alleges that on or about October 14, 2014, Plaintiffs may have been advised that, using the National Behavioral Intervention Team Association ("NaBITA") Threat Assessment tool, the incident described on February 19, 2014 represented a "mild risk," the lowest risk on the threat assessment scale.   Dr. Boocker denies the remaining allegations of paragraph 48 of the Complaint.

40.    Dr. Boocker is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 49 of the Complaint relating to Plaintiffs' beliefs and therefore denies the same.   Dr. Boocker denies the remaining allegations of paragraph 49 of the Complaint.

**Privacy Violation**

41.    Dr. Boocker admits paragraph 50 of the Complaint.

42.    In response to paragraph 51 of the Complaint, Dr. Boocker admits the first sentence of paragraph 51 and denies the second sentence.

43.    Dr. Boocker is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 52 through 56 of the Complaint and therefore denies the same.

44.    Dr. Boocker denies paragraph 57 of the Complaint.

**Pretense of Mediation Session**

45.    Dr. Boocker denies paragraph 58 of the Complaint.

46.    In response to paragraph 59 of the Complaint, Dr. Boocker is without knowledge or information sufficient to form a belief about the truth of the allegations in the second sentence of paragraph 59 and therefore denies the same.  Dr. Boocker

Page 10

denies the remaining allegations of paragraph 59 of the Complaint.

47.    Dr. Boocker admits that paragraphs 60 and 61 of the Complaint rephrase statements found in a letter from Plaintiffs' counsel dated December 22, 2014, but is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 60 and 61 and therefore denies them.

48.    Dr. Boocker denies paragraph 62 of the Complaint.

49.    In response to paragraph 63 of the Complaint, Dr. Boocker admits and alleges that Dr. Imani sent an email to other members of the Department's "core" faculty on January 10, 2015, announcing the scheduling of a special faculty meeting at the request of Dr. Boocker and requesting that recipients help in scheduling a date for that meeting by sharing information about their availability, and that the meeting was eventually scheduled for January 27, 2015.  Dr. Boocker denies the remaining allegations of paragraph 63 of the Complaint.

50.    In response to paragraph 64 of the Complaint, Dr. Boocker admits the first sentence of paragraph 64 and denies the second sentence.

51.    Dr. Boocker denies paragraphs 65 through 70 of the Complaint.

52.    In response to paragraph 71 of the Complaint, Dr. Boocker admits and alleges that Plaintiffs left the January 27, 2015 meeting shortly after introductions were completed and refused to participate in further discussions with Dr. Boocker or Dr. Imani.  Dr. Boocker denies the remaining allegations in paragraph 71 of the Complaint.

53.    Dr. Boocker is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 72 and 73 of the Complaint and

therefore denies them.

54.     Dr. Boocker admits paragraph 74 of the Complaint.

55.     Dr. Boocker is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 75 through 77 of the Complaint and therefore denies them.

56.     Dr. Boocker admits the first sentence of paragraph 78 of the Complaint. Dr. Boocker is without knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 78 of the Complaint and therefore denies the same.

57.     Dr. Boocker is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 79 of the Complaint regarding Plaintiffs' beliefs and therefore denies the same.   Dr. Boocker denies the remaining allegations of paragraph 79 of the Complaint.

58.     Dr. Boocker denies paragraphs 80 and 81 of the Complaint.

59.     Dr. Boocker admits the first sentence of paragraph 82 and denies the remainder of that paragraph.  Dr. Boocker affirmatively alleges that by email dated April 7, 2015, he asked all members of the Department's "core" faculty to schedule an individual meeting with him during the week of April 13, 2015.  Dr. Boocker further alleges that the three questions posed to each "core" faculty member by Dr. Boocker during those meetings were: (1) Is it your preference to remain a faculty member in the Department of Black Studies or would you prefer an alternative workload assignment to another department? (2) What commitment are you willing and able to make to work with myself and the leadership of the Department to move forward to achieve its mission and service its students if your workload assignment remains in Black

Studies? and (3) Are you willing to meet with an outside consultant individually and collectively to discuss the mechanism by which we move the Department forward to achieve its mission and to serve students?  Dr. Boocker further alleges that all core faculty members were informed that they had three working days after their meeting with Dr. Boocker to respond to these questions in writing, which Plaintiffs did on April 16, 2015.

60.     Dr. Boocker denies paragraph 83 of the Complaint and affirmatively alleges that he met with Dr. Wogugu on the afternoon of April 13, 2015.

61.     Dr. Boocker denies paragraphs 84 and 85 of the Complaint.

### FIRST CAUSE OF ACTION
### (U.S. Const. amend. I – Freedom of Speech)

62.     In response to the allegations of paragraph 86 of the Complaint, Dr. Boocker incorporates paragraphs 1-61, above, as if fully set forth herein.

63.     Dr. Boocker denies paragraphs 87 through 90 of the Complaint.

### SECOND CAUSE OF ACTION
### (U.S. Const. amend. XIV – Equal Protection)

64.     Dr. Boocker admits paragraph 91 of the Complaint.

65.     Dr. Boocker denies paragraphs 92 through 94 of the Complaint.

### THIRD CAUSE OF ACTION
### (U.S. Const. amend. I – Freedom of Expression)

66.     In response to the allegations of paragraph 95 of the Complaint, Dr. Boocker incorporates paragraphs 1-65, above, as if fully set forth herein.

67.     In response to the allegations of paragraph 96 of the Complaint, Dr. Boocker admits Plaintiffs have certain rights under U.S. Const. amend. I.  Dr. Boocker denies the remaining allegations in paragraph 96 of the Complaint.

68.     Dr. Boocker denies paragraphs 97 through 99 of the Complaint.

**DAMAGES**

69.     Dr. Boocker denies paragraph 100 of the Complaint.

**GENERAL DENIAL**

70.     Dr. Boocker denies all portions of the Complaint not specifically admitted herein, except those allegations which constitute admissions by the Plaintiffs.

**AFFIRMATIVE DEFENSES**

71.     The Complaint fails to state a claim upon which relief may be granted against Dr. Boocker in his individual capacity.

72.     Dr. Boocker affirmatively alleges that at all times relevant to the Complaint, he acted within the course and scope of his employment at UNO by performing his official duties.

73.     Dr. Boocker affirmatively alleges that at all times he acted in compliance with law.

74.     Dr. Boocker affirmatively alleges that the claims against him in his individual capacity are barred by the doctrine of qualified immunity.

75.     Dr. Boocker affirmatively alleges that Plaintiffs' claims for punitive damages are barred by Neb. Const. art. VII, § 5.

**RELIEF SOUGHT**

WHEREFORE, having fully answered Plaintiffs' Complaint, Dr. Boocker prays that the Court dismiss Plaintiffs' Complaint in its entirety and with prejudice to any future action and award Dr. Boocker his costs and fees herein expended.

Dated this 8th day of May, 2015.

Page 14

DAVID BOOCKER, Ph.D.,
Defendant

By:     s/ Tara A. Stingley
        David R. Buntain, NSBA #10506
        Tara A. Stingley, NSBA #23243
        CLINE WILLIAMS WRIGHT
           JOHNSON & OLDFATHER, L.L.P.
        1125 S. 103rd Street, #600
        One Pacific Place
        Omaha, NE 68124
        (402) 397-1700
        (402) 397-1806 (facsimile)
        dbuntain@clinewilliams.com
        tstingley@clinewilliams.com

        -   and   -

        John C. Wiltse, NSBA #16689
        Deputy General Counsel
        University of Nebraska
        Varner Hall, Room 237
        3835 Holdrege Street
        Lincoln, Nebraska 68583-0745
        (402) 472-1201 (voice)
        (402) 472-2038 (facsimile)
        jwiltse@nebraska.edu

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2015, I electronically filed the foregoing with the Clerk of the United States District Court for the District of Nebraska and the same was electronically transmitted to Plaintiffs' attorney of record, Sheri Long Cotton, at slongcotton@aol.com by CM/ECF.

        s/ Tara A. Stingley

Page 15