## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **OMOWALE AKINTUNDE, MANFRED WOGUGU,** | |
| **Plaintiffs,** | **4:15CV3011** |
| **vs.** | **MEMORANDUM AND ORDER** |
| **BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA - OMAHA, DAVID BOOCKER, DOES 1 THROUGH 4, in their Individual capacity;** | |
| **Defendants.** | |

This matter is before the Court on the Motion to Dismiss (Filing No. 20) filed by Defendants Board of Regents of the University of Nebraska ("BRUN") and David Boocker ("Boocker") in his official capacity (collectively "Defendants"),[1] and the Motion for Judgment on the Pleadings (Filing No. 23) filed by Defendant Boocker in his individual capacity. Also before the Court is the Objection to Magistrate Judge's Order (Filing No. 48). For the reasons discussed below, the Motions will be granted, the Objection will be overruled, and Plaintiffs' claims will be dismissed.

### PROCEDURAL HISTORY

On February 9, 2015, Plaintiffs filed their First Amended Complaint against the BRUN, the University of Nebraska at Omaha ("UNO"), Dr. Boocker, and four unidentified individuals. (Filing No. 3 at 1.) On March 18, 2015, the BRUN, UNO, and

---

[1] Defendants note that the Motion is brought on behalf of the BRUN and Boocker in his official capacity because the caption of the Second Amended Complaint lists only BRUN and Boocker as Defendants. To the extent the Second Amended Complaint is also a claim against the University of Nebraska at Omaha, that body is included within the term "Defendants."

Dr. Boocker collectively filed a Motion to Dismiss the First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). (Filing No. 8.)

Plaintiffs filed their Second Amended Complaint on April 17, 2015. (Filing No. 12.) The caption of the Second Amended Complaint names only the BRUN and Boocker as defendants. On May 4, 2015, Plaintiffs filed several documents purporting to be "supplements" to the Second Amended Complaint. (Filing Nos. 17, 18, 19.)  The body of the Second Amended Complaint also lists UNO as a defendant. (Filing No. 12 at 2-3.) The Plaintiffs seek money damages as well as declaratory and injunctive relief under 42 U.S.C. § 1983, alleging violations of the First and Fourteenth Amendments to the U.S. Constitution. (Filing No. 12 at 1, 18-19.)

Defendants filed the Motion to Dismiss (Filing No. 20) on May 6, 2015, and Boocker filed the Motion for Judgment on the Pleadings (Filing No. 23) on May 19, 2015. Plaintiffs requested an extension of time to respond to the Motions and were ordered to respond on or before June 12, 2015. (Filing No. 27.)  Plaintiffs did not respond. On June 16, 2015, Plaintiffs moved for an order permitting them to respond out of time, arguing excusable neglect due to counsel for Plaintiffs moving to a new residence. (Filing No. 29.) Defendants resisted the extension (Filing No. 30). On July 8, 2015, the Court granted Plaintiffs' request to respond out of time, giving Plaintiffs until July 10, 2015, to respond Defendants' dispositive Motions. (Filing No. 41.) Plaintiffs again failed to respond. Instead, on July 13, 2015, Plaintiffs filed a Motion to file a Reply to Defendants' Answer (Filing No. 42). Magistrate Judge F.A. Gossett denied Plaintiffs' Motion on July 20, 2015. (Filing No. 47.)  On August 3, 2015, Plaintiffs filed an Objection to Magistrate Judge's Order. (Filing No. 48.)

2

## FACTUAL BACKGROUND

Plaintiffs failed to timely respond to the Defendants' Motions. For purposes of these Motions, the Court accepts the facts pled in the Second Amended Complaint as true, though it need not accept Plaintiffs' legal conclusions:

Plaintiff Omowale Akintunde ("Akintunde") is employed by the BRUN as an Associate Professor within the Black Studies Department (the "Department") in UNO's College of Arts and Sciences ("the College"). Akintunde was chair of the Department from August of 2008 until August 15, 2011. Plaintiff Manfred Wogugu ("Wogugu") is employed as an Assistant Professor in the Department. In 2012, Professor Nikitah Okembe-RA Imani, Ph.D. ("Imani") was named Chair of the Department by members of the Department faculty.

Following Imani's hiring, conflicts over personnel issues began to arise within the Department. On February 19, 2014, a meeting (the "Meeting") was held of the Department's "core" faculty, which included the Plaintiffs, Imani, Associate Professor Margaret "Peggy" Jones ("Jones"), and Assistant Professor Jennifer Harbour, Ph.D. ("Harbour"). Before the Meeting, Imani shared with the "core" faculty a copy of a one-page document entitled "Department of Black Studies Copy Policy Effective 2/10/2014 Edition 1" ("Copy Policy").

During the Meeting, members of the Department "core" faculty in attendance, including Plaintiffs, were critical of the Copy Policy and other administrative matters within the Department, and Imani lost his composure. When Imani left the Meeting and closed the door behind him, a framed picture fell to the floor in the adjoining reception

area, and the fall broke the glass in the picture frame; Imani cut himself while cleaning up the broken glass.

On February 22, 2014, Dr. Imani sent Akintunde and Jones an email apology. (Filing No. 22, ¶ 19.) Subsequently, the Plaintiffs, along with Harbour and Jones, prepared and signed a four-page memo dated February 24, 2014, and delivered copies to Boocker and Paul Kosel ("Kosel"), Manager of UNO Campus Security and co-chair of the UNO Behavioral Review Team ("BRT"). The BRT is a program developed by UNO. Its procedures provide, "To educate and empower all members of the University community, resources and procedures are in place to prevent, deter, and respond to concerns regarding acts of violence." (Filing No. 12 ¶ 28.) The BRT reviews situations and recommends actions in accordance with existing UNO policies. (Filing No. 12 ¶ 30.)

The BRT Procedures state, "It is the responsibility of all faculty, staff, and students to immediately report any situation that could reasonably result in harm," and "University community members will be able to report threatening or concerning behavior to the Team by speaking directly to a committee member or submitting an incident report." (Filing No. 22 ¶ 24.)   The BRT Procedures further state, "It is everyone's responsibility to report to the Behavioral Review Team situations that could possibly result in harm to any member of the campus community." (Filing Nos. 22 ¶ 24, 6-4 at ECF 6.) Plaintiffs allege that Defendants' efforts to resolve issues with Imani did not follow BRT Procedures.

Plaintiffs further allege that the Defendants "exacerbated the issues between the faculty and Imani by delivering a copy of Plaintiffs' complaint to Defendant [sic] Imani." (Filing No. 12 ¶ 32.)   Boocker denies this allegation and contends Plaintiffs and the

other two signatories to the four-page memo dated February 24, 2014, sent a copy of the document to Dr. Imani themselves. (Filing No. 22 ¶ 25.) Plaintiffs also allege Boocker did not forward the Plaintiffs' memo to the BRT; Boocker contends there was no need for him to do so. (Filing No. 12, ¶¶ 32, 35; Filing No. 22 ¶ 28.)

Plaintiffs allege that Dr. Boocker (and unidentified others) "deliberately colored Imani's opinion" of the Department "in an effort to create a distrust among the [Department's] faculty and Imani" and "to prevent it from operating effectively, thus, justifying the elimination of Black Studies as a department." (Filing No. 12-1 ¶¶ 79-80.) Dr. Boocker denies these allegations.  Plaintiffs further allege that Boocker "knowingly and deliberately . . . delivered a BRT request from the faculty . . . in an attempt to create hostility and distrust in the Black Studies Department"; permitted Imani to violate University rules; failed to follow the advice of a consultant hired to address Plaintiffs' complaint; and failed to obtain Plaintiffs' suggested mediator. (Filing No. 12-1 ¶ 81.) Boocker denies these allegations.

## STANDARD OF REVIEW

"Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." *Minch Family LLLP v. Buffalo-Red River Watershed Dist.*, 628 F.3d 960, 965 (8th Cir. 2010) (citing *Faibisch v. Univ. of Minn.,* 304 F.3d 797, 803 (8th Cir. 2002)).  This is "the same standard used to address a motion to dismiss for failure to state a claim under Rule 12(b)(6)."  *Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). Accordingly, the Court will assess both of Defendants' Motions under the same standard.

5

"To survive a motion to dismiss, the factual allegations in a complaint, assumed true, must suffice 'to state a claim to relief that is plausible on its face.'" *Northstar Indus., Inc. v. Merrill Lynch & Co.*, 576 F.3d 827, 832 (8th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).   "[A]lthough a complaint need not include detailed factual allegations, 'a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 629-30 (8th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555).  "Instead, the complaint must set forth 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.* at 630 (citing *Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 716 (8th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted).  "Courts must accept . . . specific factual allegations as true but are not required to accept . . . legal conclusions."  *Outdoor Cent., Inc. v. GreatLodge.com, Inc.*, 643 F.3d 1115, 1120 (8th Cir. 2011) (quoting *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459 (8th Cir. 2010)) (internal quotation marks omitted).  When ruling on a defendant's motion to dismiss, a judge must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very

6

remote and unlikely.'" *Twombly*, 550 U.S. at 555, 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).   The complaint, however, must still "include sufficient factual allegations to provide the grounds on which the claim rests." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009).

## DISCUSSION

### I.       Sovereign Immunity

Defendants argue they are immune from suit under the Eleventh Amendment. Sovereign immunity bars any suit brought in federal court against a state or state agency, regardless of the nature of the relief sought, unless Congress has abrogated the states' immunity or a state has consented to suit or waived its immunity. *See Seminole Tribe v. Florida,* 517 U.S. 44, 74 (1996); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984); *Edleman v. Jordan,* 415 U.S. 651, 663 (1974). The Eighth Circuit has held that "[w]hile under the doctrine set forth in *Ex Parte Young,* 209 U.S. 123 (1908), state officials may be sued in their official capacities for prospective injunctive relief without violating the Eleventh Amendment, the same doctrine does not extend to states or state agencies." *Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007); *see also Anthony K. v. State,* 855 N.W.2d 802, 785 (Neb. 2014). Sovereign immunity has been recognized under Nebraska law.  *Anthony K.,* 855 N.W.2d at 812.

### a.       UNO and the BRUN

Under the Eleventh Amendment, states and state agencies may not be sued for "any kind of relief," whether monetary or prospective. *Monroe*, 495 F.3d at 594. Although there is some confusion as to whether UNO is still a party to this lawsuit, both

the Nebraska Supreme Court and the Eighth Circuit Court of Appeals have held that the BRUN and the University of Nebraska, including UNO, are state agencies and thus entitled to state sovereign immunity under the Eleventh Amendment to the U.S. Constitution. *See Doe v. Bd. of Regents of the Univ. of Neb.*, 788 N.W.2d 264, 281, n. 51 (Neb. 2010) (affirming dismissal of claims against the BRUN and the universities within the University of Nebraska system are state agencies entitled to sovereign immunity); *Becker v. Univ. of Neb. at Omaha,* 191 F.3d 904, 908-09 (8th Cir. 1999) (recognizing UNO is considered an arm of the State of Nebraska and thus immune from suit for purposes of the Eleventh Amendment); *see also Bd. of Regents of Univ. of Nebraska v. Dawes*, 370 F. Supp. 1190, 1193 (D. Neb. 1974) (concluding that Neb. Rev. Stat. § 85–105 does not grant the BRUN the power to waive immunity from suit in federal court). There is no evidence that the BRUN has waived its sovereign immunity against Plaintiffs' claims. Further, the extent UNO is a party to this action, it has not waived its sovereign immunity. Accordingly, Plaintiffs' claims against the BRUN and any claims against UNO will be dismissed.

### b.   Claims Against Boocker in Official Capacity

Defendant Boocker argues that Plaintiffs' claims against him in his official capacity must be dismissed.  In addition to barring claims against the state, "the Eleventh Amendment prohibits federal-court lawsuits seeking monetary damages from individual state officers in their official capacities because such lawsuits are essentially 'for the recovery of money from the state.'" *Treleven v. Univ. of Minn.,* 73 F.3d 816, 818 (8th Cir. 1996) (footnote omitted) (quoting *Ford Motor Co. v. Dep't of Treasury,* 323 U.S. 459, 464 (1945)); *see also Grand River Enters. Six Nations, Ltd. v. Beebe,* 467 F.3d

8

698, 701 (8th Cir. 2006) ("The Eleventh Amendment protects states from being sued in federal court without their consent and also bars suits against state officers acting in their official capacities when the state itself is 'the real, substantial party in interest.'" (quoting *Ford Motor Co.,* 323 U.S. at 464)).  Plaintiffs' Second Amended Complaint asserts claims against Boocker in his official capacity and seeks relief that includes money damages.  For such claims, UNO and the State of Nebraska are the real party in interest and Plaintiffs' claims for money damages against Boocker in his official capacity must be dismissed.

In addition to money damages, the Plaintiffs' Second Amended Complaint seeks declaratory prospective relief against Boocker.  As noted above, ". . . under the doctrine set forth in *Ex Parte Young,* 209 U.S. 123 (1908), state officials may be sued in their official capacities for prospective injunctive relief without violating the Eleventh Amendment . . . ."  *Monroe*, 495 F.3d at 594.  This exception to Eleventh Amendment is "available only when a plaintiff seeks to vindicate a *federal* right."  *Grand River Enterprises Six Nations, Ltd. v. Beebe*, 467 F.3d 698, 701 (8th Cir. 2006).  Thus, "*Ex parte Young* simply permits an injunction against a state official in his official capacity to stop an ongoing violation of federal law."  *Randolph v. Rodgers,* 253 F.3d 342, 348 (8th Cir. 2001).

There has been no waiver of sovereign immunity with respect to the type of declaratory relief Plaintiffs seek. Each of Plaintiffs' requests for declaratory relief seeks a declaration that Boocker and the BRUN's past bad acts violated the Constitution.  This Court has previously noted that "while a suit to enjoin state officials in their official capacity may proceed if the complaint alleges an ongoing violation of federal law and

seeks relief properly characterized as prospective, a declaratory judgment establishing *past* liability of the State is nevertheless forbidden by the Eleventh Amendment." *Jacobson v. Bruning*, No. 4:06-CV-3166, 2007 WL 1362638, at *2 (D. Neb. Apr. 24, 2007) (citing *Verizon Maryland, Inc. v. Public Service Com'n of Maryland,* 535 U.S. 635, 646 (2002)) (Kopf, J.) (emphasis in original) *aff'd,* 281 F. App'x 638 (8th Cir. 2008). Accordingly, Plaintiffs' claims for declaratory relief against Boocker must be dismissed.

Similarly, Plaintiffs' claims for prospective relief against Boocker do not fall within the *Ex Parte Young* exception. The only prayer seeking prospective relief against Boocker in his official capacity is Plaintiffs' request that Boocker "be preliminarily and permanently enjoined from interacting, supervising or communicating with the Plaintiffs." (Filing No. 12-1 at 9.)  Such a broad injunction would not be an "injunction against a state official in his official capacity to stop an ongoing violation of federal law." *See Randolph,* 253 F.3d at 348.  The Second Amended Complaint provides no indication that Boocker's ability to interact, supervise, or communicate with Plaintiffs broadly affects their constitutional rights.  Accordingly, the Court will dismiss Plaintiffs' claims against Boocker in his official capacity.

## II.  Claims Against Boocker in his Individual Capacity

Defendants argue that the remaining claims against Boocker in his individual capacity must be dismissed based on qualified immunity. To determine whether Boocker is "entitled to qualified immunity, [the Court] must conduct a two-step inquiry: (1) whether the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) whether the right was clearly established at the time of the deprivation." *Solomon v. Petray*, No. 13-1635, 2015 WL

4546837, at *5 (8th Cir. July 29, 2015) (quoting *Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir. 2012)). "Courts have discretion to decide the order in which to engage these two prongs." *Tolan v. Cotton,* 134 S.Ct. 1861, 1866 (2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). The Court concludes that Plaintiffs have failed, in each of their claims, to articulate a violation of a clearly established constitutional or statutory right.

### a.    First Cause of Action

Plaintiffs' first cause of action, labeled as a freedom of speech claim, asserts that Plaintiffs "have a property interest in the Policies, Rules and Regulations adopted by the Defendants guaranteeing Plaintiffs a safe workplace" and that "Plaintiffs are being subjected to a hostile work environment and the threat of verbal and physical abuse," thus depriving Plaintiffs "of the relief and protections to which they are entitled." (Filing No. 12-1 ¶¶ 87-90.) The First Amendment's Freedom of Speech Clause does not expressly provide a property interest to a "safe workplace." Even if such a right existed, for a constitutional right to be "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Plaintiffs must identify analogous case law or a statute establishing that reasonable officials should have known that their conduct was unlawful. *See Casteel v. Pieschek*, 3 F.3d 1050, 1053 (7th Cir. 1993).

Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). In this case, the Second

11

Amended Complaint alleges Plaintiffs have a "property interest in the Policies, Rules, and Regulations adopted by the Defendants guaranteeing Plaintiffs a safe workplace." (Filing No. 12-1 ¶ 87.) The Constitution does not guarantee government employees minimal levels of safety or security in the workplace.  *See Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 129 (1992) (holding that the Due Process Clause does not "guarantee municipal employees a workplace that is free of unreasonable risks of harm").  Therefore, it cannot be said that Plaintiffs' asserted property interest has been clearly established.  Accordingly, Plaintiffs' first cause of action against Boocker must be dismissed.

### b.    Second Cause of Action

Plaintiffs' Second Cause of Action alleges that UNO's Black Studies Department has the highest percentage of Black employees, and that the Defendants have allowed a hostile and dangerous working environment to exist over a number of years.  Based on these assertions, Plaintiffs allege that the Black Studies Department is being treated differently because of its racial makeup, in violation of the Fourteenth Amendment's Equal Protection Clause. (Filing No. 12-1 ¶¶ 91-94.) Thus, the second cause of action appears to be a claim under the Equal Protection Clause on the basis of racial discrimination.  The Eighth Circuit has recognized that "the constitutional right to be free from [racial] discrimination is so well established and so essential to the preservation of our constitutional order that all public officials must be charged with knowledge of it." *Burton v. Arkansas Sec'y of State*, 737 F.3d 1219, 1229 (8th Cir. 2013) (quoting *Wimbley v. Cashion*, 588 F.3d 959, 963 (8th Cir. 2009)).  For purposes of qualified immunity, the Court looks to whether Plaintiffs have alleged a violation of that right.

Absent direct evidence of discrimination, the Eighth Circuit analyzes § 1983 equal protection claims using the *McDonnell Douglas* burden-shifting framework. *See e.g. Burton v. Ark. Sec'y of State*, 737 F.3d 1219, 1229 (8th Cir. 2013); *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1014 (8th Cir. 2013). Because Plaintiffs have not alleged direct discrimination, they must first allege a prima facie case of discrimination. To state a prima facie claim, Plaintiffs must allege, "(1) [they were] a member of a protected class, (2) [they] met [their] employer's legitimate expectations, (3) [they] suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination." *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011) (citation omitted).

Plaintiffs have not pled a prima facie case of discrimination because they have not alleged an adverse employment action. To be sufficiently "adverse," an employment action must result in a tangible change in working conditions and produce a material employment disadvantage. *Musolf v. J.C. Penney Co.*, 773 F.3d 916, 920, n.3 (8th Cir. 2014). Adverse employment actions may include termination, a reduction in pay, or a loss of future career prospects. *See Robinson v. American Red Cross*, 753 F.3d 749, 755 (8th Cir. 2014). "Acts short of termination may constitute adverse employment actions, however, not everything that makes an employee unhappy is actionable." *Meyers v. Nebraska Health & Human Servs.*, 324 F.3d 655, 659 (8th Cir. 2003) (citing *Montandon v. Farmland Indus., Inc.*, 116 F.3d 355, 359 (8th Cir. 1997)). Minor changes in working conditions with no reduction in pay do not constitute materially adverse actions. *Brown v. Lester E. Cox Med. Ctrs.*, 286 F.3d 1040, 1045 (8th Cir. 2002). Loss of prestige, petty slights, or minor annoyances do not rise to the level of adverse

4:15-cv-03011-LSC-FG3   Doc # 52   Filed: 08/20/15   Page 14 of 18 - Page ID # 352

employment actions. *See Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 987 (8th Cir. 2011).

Plaintiffs' only ostensible allegation of adverse action is that the working environment became hostile. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 808 (1998) (noting that a hostile work environment is actionable only when culminates in a tangible employment action).   However, Plaintiffs continue to occupy their same positions within UNO and they have alleged no tangible change in working conditions or reduction in pay. *See Singletary v. Missouri Dep't of Corr.*, 423 F.3d 886, 891 (8th Cir. 2005) (concluding there was no adverse employment action where employee maintained his pay, grade, and benefits even though employee was placed on leave pending investigation).   Accordingly, Plaintiffs have alleged no adverse employment action and therefore have not alleged a violation of a constitutional right.

   **c.    Third Cause of Action**

Plaintiffs' final cause of action alleges that Defendants violated their property interest in their freedom of expression guaranteed by the First Amendment. Plaintiffs allege that "[a]lthough [Defendant][2] knows the Black Studies Department is deteriorating, the reasons why it is deteriorating, and the action necessary to restore the department to full effectiveness, he deliberately refuses to take said action;" and that "[Defendant] refuses to take said reparative action because he desires to justify the change of the Black Studies Department as a Department to that of a Program placed

---

   [2] The Second Amended Complaint uses the term "Plaintiff" in paragraphs 97-99, though the allegations appear to refer to actions by a Defendant. To view the Second Amended Complaint in a light most favorable to Plaintiffs, the Court presumes Plaintiffs intended to refer to a Defendant's activities rather than their own.

14

under the supervision of a Department Director." (Filing No. 12-1 ¶¶ 96-98.)  Plaintiffs further allege that the "[Defendant's] characterization of a 'Program' will deprive them of the freedom of expression they have enjoyed in developing unique successful teaching programs and methods and will require them to act according to the dictates of the Director of the Department under which they are placed."  (Filing No. 12-1 ¶ 99.)

The basis for Plaintiffs' claims in the third cause of action are difficult to identify.  Even given a generous reading, the third cause of action fails because the Plaintiffs have not alleged a particularized injury in fact.   "To establish Article III jurisdiction, [Plaintiffs] must demonstrate standing to assert *this* claim against [this] defendant[ ]."  *Duit Const. Co. Inc. v. Bennett*, No. 14-2779, 2015 WL 4645965, at *2 (8th Cir. Aug. 6, 2015).  "Standing requires (1) an injury that is concrete and particularized and actual or imminent, not conjectural or hypothetical, (2) that the injury be fairly traceable to the challenged action of the defendant, and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Id.* (quoting *Turkish Coalition of Am., Inc. v. Bruininks,* 678 F.3d 617, 621 (8th Cir. 2012)).

Plaintiffs appear to argue that Boocker intends to increase the tension within UNO's Black Studies Department such that Boocker would have an excuse to place the Black Studies Department under the guidance of another department.  (Filing No. 12 ¶ 49.)   Plaintiffs allege that this action would somehow deprive Plaintiffs of their independence and freedom of expression guaranteed by the First Amendment.  (Filing No. 12 ¶ 49, 99.)  Plaintiffs' claims are far too speculative to satisfy Article III's standing requirements. "Article III does not authorize federal courts to offer legal advice about hazy potentialities." *Simes v. Ark. Judicial Discipline & Disability Comm'n*., 734 F.3d

830, 835 (8th Cir. 2013). Plaintiffs' claims fail to assert any facts suggesting that future re-classification of the Black Studies Department is more than conjecture or speculation. Further, Plaintiffs fail to allege any objectively reasonable connection between such speculative conduct and a chilling effect on their speech. *Turkish Coal. of Am.*, 678 F.3d at 622 (dismissing claims for lack of standing where Plaintiffs failed to establish an objectively reasonable chilling effect on speech).  Accordingly, Plaintiffs' third cause of action must be dismissed for lack of standing.

## III.    Objection to Magistrate Judge's Order

After failing to timely respond to Defendants' Motions, Plaintiffs moved for leave to file a reply to Boocker's Answer.  (Filing No. 42.)  Magistrate Judge F.A. Gossett denied Plaintiffs' request, noting that Plaintiffs had not submitted a completed proposed reply and that the motion for leave appeared to be a ploy to respond to Defendants' pending motions out of time.  (Order, Filing No. 47 at 2.)  Moreover, Judge Gossett concluded that Plaintiffs articulated no legitimate reason to grant leave to file a reply to Defendants' Answer.  (Filing No. 47 at 2.)  Plaintiffs objected to Judge Gossett's Order, presumably arguing that Judge's Gossett's conclusion was clearly erroneous or contrary to law.

### a.    Standard of Review

Upon review of a Magistrate Judge's order of a non-dispositive motion, the District Judge to whom the case is assigned shall consider objections and may modify or set aside any part of the Magistrate Judge's Order only if it is shown to be "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). Clear error "is a high standard to meet," *see Napolitano v. Omaha Airport Auth.*, No. 8:08-CV-

16

299, 2009 WL 1740826, at *3 (D. Neb. June 15, 2009) (quotation omitted), and requires a "definite and firm conviction on the part of the reviewing court that a mistake has been made," *see Schinzing v. Mid-States Stainless, Inc.*, 415 F.3d 807, 813 (8th Cir. 2005).

### b.    Discussion

Plaintiffs appear to argue that because Defendants' assertions in the Answer were untrue, a reply is necessary under Federal Rule of Civil Procedure 11.  However, Plaintiffs have not complied with Rule 11's requirement that a separate motion be filed that specifically describes the alleged misconduct.  Fed. R. Civ. P. 11(b).  Moreover, Plaintiffs have not identified any reason a reply is appropriate at this time. A plaintiff many not reply to an answer as a matter of right. *See* Fed. R. Civ. P. 7(a)(7) (plaintiff may only file a reply to an answer "if the court orders one"). Other than replying to a counterclaim, "a reply to an answer ordinarily is unnecessary and improper in federal practice." 5 Charles Alan Wright & Arthur Miller, et al., *Fed. Prac. & Proc. Civ.* § 1185 (3d. ed. 1998 & Supp. 2013).  The Court agrees with Judge Gossett that the Plaintiffs have failed to articulate any reason that a reply is appropriate in this case.  Accordingly, Plaintiffs' objections will be overruled.

### CONCLUSION

For the reasons stated, Plaintiffs' claims against the BRUN, Boocker, and UNO, to the extent UNO is a party, will be dismissed.  Plaintiffs' objection to Judge Gossett's Order will be overruled.  Accordingly,

IT IS ORDERED:

17

1.      The Motion to Dismiss (Filing No. 20) filed by Defendants Board of
Regents of the University of Nebraska and David Boocker in his official
capacity, is granted;

2.      The Motion for Judgment on the Pleadings (Filing No. 23) filed by
Defendant David Boocker in his individual capacity, is granted;

3.      The Objection to the Magistrate Judge's Order (Filing No. 48) is overruled;

4.      The Declaration of Sheri Long Cotton (Filing No. 49) filed as an objection
to the Magistrate Judge's order, will be terminated as improperly filed;

5.      This action is dismissed with prejudice; and

6.      A separate judgment will be entered.


Dated this 20th day of August, 2015

                                        BY THE COURT:

                                        s/Laurie Smith Camp
                                        Chief United States District Judge